UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIANA BURGESS,

                                    Plaintiff,

            -against-

THE CITY OF NEW YORK, OFFICER CHAIM
WINDERMAN, OFFICER ALEN MARIANO,
OFFICER CHAIM WINDERMAN, OFFICER
NICHOLAS DELLATACOMA, OFFICER
RABBI FAZLA, AND OTHER AS-YET-
UNKOWN POLICE OFFICERS AND
SUPERVISORS JOHN DOES #1-12, *in their
individual and official capacities*.

                                    Defendants.

---

**24 Civ. 3501**


**COMPLAINT AND
JURY DEMAND**

---

        Plaintiff KIANA BURGESS, by her attorneys, ZMO Law PLLC,

complaining of the Defendants, respectfully alleges as follows based on

information and belief:


## **PRELIMINARY STATEMENT**

        1.        When Plaintiff Kiana Burgess was arrested after a dispute on the

subway in June 2023, she immediately told police she was a diabetic and

dependent on insulin. But rather than release her or provide her the insulin they

knew she needed, New York City Police Department ("NYPD"), brought her to

their precinct, processed her arrest, brought her downtown to central booking, and waited until she was acutely ill from diabetic ketoacidosis ("DKA") and vomiting profusely before they allowed her access to any medical assistance. At that point they took her to a local hospital where they illegally handcuffed her to the bed and shackled her feet, even while she was in the intensive care unit for two days. Finally, they unlawfully delayed her arraignment for a total of five days. All of this, they said, was pursuant to New York City policies, including a Patrol Guide section that requires handcuffing and shackling hospitalized prisoners even when there exists no safety concern or other specific justification.

2.      The unreasonable delay in arraigning Ms. Burgess, cuffing her to the hospital bed, and shackling her feet for more than five days amounted to excessive force, unconstitutional conditions of confinement, and denial of Ms. Burgess's right to a prompt presentment in violation of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and analogous New York state provisions.

3.      Defendants also violated the Americans with Disabilities Act by refusing to arraign Ms. Burgess on account of her actual or perceived disability.

4.      Ms. Burgess sustained serious physical and psychological harm due to the actions of the NYPD officers.

5.      Ms. Burgess now sues both the City of New York and the above-named police officers who executed the City's policies ("Defendant Officers") for compensatory damages, punitive damages, and attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiff's civil rights, and pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12132, as secured by said statutes, New York Civil Rights Law § 28, the common law, and the Constitutions of the State of New York and the United States.

## JURISDICTION

6.      Plaintiff brings this action for compensatory and punitive damages, affirmative and equitable relief, an award of costs and attorney fees, and such other and further relief as this Court deems equitable and just.

7.      This action is brought pursuant to 42 U.S.C. § 1983 *et seq.* to redress the deprivation under the color of law of Plaintiff's rights as secured by the United States Constitution, as well as under 42 U.S.C. § 12132, to redress the deprivation of rights secured by the Americans with Disabilities Act.

8.      The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Ms. Burgess's claims brought under the laws of the State of New York.

10.     The Court has the authority to confer the injunctive relief Plaintiff seeks under 28 U.S.C. § 2202, 42 U.S.C. § 1983, and Rule 65 of the Federal Rules of Civil Procedure.

11.     Ms. Burgess has complied with the requirements of New York General Municipal Law Section § 50-I by making and serving a notice of claim on the Comptroller of the City of New York on August 25, 2023.

12.     Said notice was served within the time required by New York General Municipal Law Section § 50-e.

13.     More than thirty days have elapsed since the service of that notice and no offer of settlement has been made.

14.     At the request of the City of New York, Ms. Burgess submitted to a hearing pursuant to New York Municipal Law Section § 50-h on April 4, 2024.

## **VENUE**

15.     Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

16.     Plaintiff respectfully demands a trial by jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. 38(b).


## PARTIES

17.     Plaintiff KIANA BURGESS, a 24-year-old female, is a citizen of the United States and a resident of the State of New York.

18.     Defendant CITY OF NEW YORK was and is a municipal corporation that is a political subdivision of the State of New York, was the employer of the Defendant Officers and was at all times relevant to this Complaint responsible for the administrative and managerial policies, practices and customs of the New York City Police Department ("NYPD").

19.     Defendant Officer Alen Mariano was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

20.     Defendant Officer Chaim Winderman was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

5

21.     Defendant Officer Nicholas Dellatacoma was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of her employment in carrying out law enforcement functions. He is sued in her individual and official capacities.

22.     Defendant Officer Rabbi Fazla was at all times relevant to this Complaint a duly appointed and acting officer of the NYPD, acting under color of law and within the scope of his employment in carrying out law enforcement functions. He is sued in his individual and official capacities.

23.     Defendants Does #1 through 12, whose actual names Plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe," represent those officers, supervisors, and/or other agents and employees of the City of New York, acting under color of law and within the scope of their employment in carrying out law enforcement functions, who participated in the misconduct described herein. They are sued in their individual and official capacities.

## FACTS

24.     On June 23, 2023, at approximately 12:45 p.m., NYPD officers arrested Ms. Burgess inside the subway station at East 86th Street and Lexington Avenue in Manhattan.

25.     After being taken into custody, Ms. Burgess informed officers that she was an insulin-dependent diabetic, she did not have any insulin with her, she had not had insulin all day, and she needed insulin.

26.     On information and belief, Ms. Burgess informed Officer Mariano that she was an insulin-dependent diabetic, she did not have any insulin with her, she had not had insulin all day, and she needed insulin.

27.     Officer Mariano and other NYPD Police officers ignored her request for insulin.

28.     Rather than providing insulin, an NYPD officer advised Ms. Burgess not to tell the personnel at central booking that she was diabetic, as they would take her to the hospital, and it would slow down the process.

29.     When Ms. Burgess arrived at central booking in 100 Centre Street, New York County, she informed various unknown NYPD officers, including John Does #1 and #2, who staffed Central Booking at 100 Centre Street and a nurse at the same location that she was an insulin-dependent diabetic and needed insulin.

30.     Rather than take her to the hospital, NYPD officers took her to a cell at 100 Centre Street. She repeatedly told various NYPD officers, including John Does #3 and 4, that she would get very ill soon. Ms. Burgess vomited repeatedly, prompting an ambulance to be called.

31.    Ms. Burgess was transported to New York Presbyterian Hospital in Manhattan. She was found to be hyperglycemic and suffering from DKA. She was admitted to the intensive care unit ("ICU") due to the dangerous nature of the hyperglycemic episode. She spent two days in the ICU.

32.    After approximately two days, Ms. Burgess was stabilized, and her care level was downgraded.

33.    Upon information and belief, Ms. Burgess was kept at the hospital for approximately three additional days because NYPD officers would not permit her to bring insulin with her to the arraignment courts at 100 Centre Street, and so she had to stay at the hospital where she could continue to receive insulin until she was arraigned.

34.    Ms. Burgess was not arraigned until the late afternoon or evening of June 28, 2023—more than five days after her arrest.

35.    While Ms. Burgess was in the hospital, she was handcuffed to a hospital bed and her legs were shackled by NYPD personnel.

36.    Ms. Burgess suffered acute emotional distress as a result, including experiencing and expressing suicidal ideation on multiple occasions.

37.    NYPD officers refused to let Ms. Burgess talk to her mother, father or girlfriend on the phone, claiming it was "against policy," for her to do

so. NYPD officers denied Ms. Burgess access to phone calls even after she expressed suicidal ideation.

38.     Officer Chaim Winderman, one of the NYPD officers who guarded Ms. Burgess, refused to uncuff her so that she could use the bathroom or shower.

39.     While he was guarding Ms. Burgess, Officer Winderman urinated in the bathroom in Ms. Burgess's hospital room with the door open, causing additional emotional distress to Ms. Burgess.

40.     When psychiatric medical personnel gave Ms. Burgess a pen to write with to help address her emotional distress, Officer Winderman insisted she was not allowed to use the pen, causing further emotional distress.

41.     When Ms. Burgess was finally arraigned at the hospital on June 28, 2023, in the late afternoon, bail was set at $10,000. She was transported to Rikers Island from the hospital, leaving New York Presbyterian late at night on June 28, 2023. Her family posted bail promptly, and she was taken from Rikers to 100 Centre Street in the morning on June 29, 2023, and released later that day.

42.     At any time during Ms. Burgess's hospitalization, the officers could have ended the torment by conducting a bedside arraignment.

43.     Ms. Burgess was conscious, competent to be arraigned, and held in a private room during all five days she spent in the hospital, including when she was in the ICU.

44.     Ms. Burgess continues to suffer emotional distress due to her ordeal, including experiencing acute emotional distress every time she sees an NYPD officer, which happens one or more times almost every day.

45.     Had Ms. Burgess been timely arraigned, as the United States and New York State Constitution require, her family would have posted bail, and she would have been unshackled and released promptly.

46.     NYPD officers regularly fail to arraign hospitalized detainees within 48 hours, despite the ready availability of virtual bedside arraignments.

47.     Members of the NYPD are instructed, as a matter of department policy, to handcuff and shackle detainees throughout their hospital stay, even when they, like Plaintiff, are not a risk to themselves or others.

48.     Members of the NYPD are instructed, as a matter of department policy, to refuse to allow hospitalized detainees to make phone calls.

## DAMAGES

49.     Plaintiff suffered physical, psychological, economic, and emotional injuries as a result of being handcuffed and shackled to a bed for more than five days while in custody of the NYPD.

50.     Plaintiff suffered the loss of her freedom for more than five days, personal injuries, pain and suffering, severe mental anguish, emotional distress, humiliation, indignities and embarrassment, degradation, damage to reputation, and loss of natural psychological development, all of which continue to date and are likely to continue into the future.

## COUNT I

**42 U.S.C. § 1983 Unconstitutional Conditions of Confinement in violation of the Fourteenth Amendment for denial of medical care — Officer Alen Mariano, John Does #1-4**

51.     Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

52.     Officer Alen Mariano and other unknown NYPD Officers, including John Does #1-4, individually and in concert, failed to provide Plaintiff was medical care for her insulin-dependent diabetes, despite being told by Plaintiff of the same.

53.      Officer Mariano's and John Does #1-4 failure to provide Plaintiff with medical care resulted in Plaintiff's development of Diabetic Ketoacidosis

(DKA) a life-threatening complication of diabetes that resulted in Plaintiff's hospitalization.

54.     Plaintiff experienced vomiting, pain, exhaustion and severe emotional distress and (as she feared) faced life-threatening complications of her diabetes due to Officer Mariano and John Does #1-4's refusal to provide her with medical care.

55.     Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.


## COUNT II

**42 U.S.C. § 1983 Excessive Delay in Arraignment in violation of the Fourth and Fourteenth Amendments — Defendant Officers**

56.     Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

57.     The Defendant Officers, individually and in concert, knowingly, willfully, intentionally, and motivated by ill will, deprived Plaintiff of an arraignment for more than five days following her arrest at or around 12:45 p.m. on June 23, 2023.

58.     No *bona fide* emergency or other extraordinary circumstance justified the delay in Plaintiff's arraignment.

59.     The delay was motivated by ill will against Plaintiff.

60.     Plaintiff was not arrested pursuant to a warrant.

61.     The Defendant Officers thereby violated or caused the violation of Plaintiff's clearly established right not to be deprived of liberty without a prompt determination of probable cause by a neutral magistrate, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and caused all of her injuries and damages.

62.     Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

63.     Each Defendant named in this Count is also liable for unreasonably failing to intervene to prevent such infringement of Plaintiff's constitutional rights.

64.     The actions of the Defendant Officers were motivated by evil intent and/or were done in reckless or callous indifference to Plaintiff's constitutional rights. Accordingly, punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

65.     Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

## COUNT III

**42 U.S.C. § 1983, Municipal liability for Excessive Delay in Arraignment in violation of the Fourth and Fourteenth Amendments – Defendant City of New York**

66.     Plaintiff hereby incorporates by reference all foregoing paragraphs and further alleges as follows:

67.     The Police Commissioner and police officers employed by the NYPD are agents and employees of Defendant City of New York.

68.     Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner or his authorized agents, during all times relevant to this Complaint, had final responsibility for training, instructing, supervising, and disciplining police officers and other employees and agents of the NYPD with respect to their constitutional requirement to bring all arrestees, including those who are hospitalized, before a neutral magistrate for a determination of probable cause without unreasonable delay.

69.     Under the United States Supreme Court's decision in *County of Riverside v. McLaughlin*, pre-arraignment detention beyond 48 hours is *per se* unreasonable and cannot be excused by "everyday problems of processing suspects through an overly burdened criminal justice system."

70.     At all times relevant to this Complaint, and in violation of the aforementioned constitutional requirement, the City carried out a custom,

policy, practice, procedure or rule of delaying arraignments beyond 48 hours for hospitalized individuals, including those, like Plaintiff, who were sufficiently healthy to be arraigned at any time during their hospitalization.

71.     The City, through its policymakers within the NYPD, explicitly or tacitly approved the unconstitutional practice described above. In maintaining its policy, practice, procedure or rule regarding the failure to promptly arraigned hospitalized detainees, the city was deliberately indifferent to the constitutional rights of the public generally, and Plaintiff specifically.

72.     The Defendant Officers acted consistently with and pursuant to the aforementioned policy when they engaged in the conduct set forth above.

73.     At all relevant times, the City was aware of and deliberately indifferent to the fact that its policy would result in the deprivation of Plaintiff's and others' constitutional rights.

74.     In addition, the City, as a result of its policymakers' deliberate indifference, failed to adequately train the Defendant Officers to ensure hospitalized detainees were arraigned by video without unreasonable delay.

75.     The City's policymakers knew that police officers frequently detain hospitalized arrestees for 48 hours or longer and that, in such cases, officers must conduct bedside arraignments in order to comply with the Constitution's prompt arraignment requirement.

76.     Policymakers knew that failing to provide such training would cause hospitalized arrestees to be deprived of their constitutional right to be arraigned within 48 hours.

77.     Policymakers had the knowledge and notice alleged in the proceeding paragraphs based on the inherent obviousness of the need for such training and based on prior civil rights complaints alleging that NYPD officers failed to conduct bedside arraignments within 48 hours of arrest. *See Morohashi v. City of New York, et al.*, 21-cv-07011 (EK) (MMH), *Brim v. City of New York, et al.*, 13-cv-1082 (SJ), and *Zalewski v. City of New York*, 13-cv-7015 (ARR) (PK).

78.     The City's failure to train Defendant Officers to conduct prompt arraignments directly caused Defendant Officers to delay Plaintiff's arraignment and violate her constitutional rights.

79.     The aforementioned policies exposed Plaintiff to a substantial risk of serious harm.

80.     The aforementioned policies, which amounted to deliberate indifference, were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

81.     The aforementioned policies played a part in the Defendant Officers' decision to detain Plaintiff for more than five days without arraignment.

82.     The aforementioned policies were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

83.     There is a substantial risk that Plaintiff will be subjected again to the NYPD's unlawful policy of failing to arraign hospitalized arrestees within a reasonable period of time.


## COUNT IV

**42 U.S.C. § 1983 Unconstitutional Conditions of Confinement in violation of the Fifth and Fourteenth Amendments — Defendant Officers Chaim Winderman, Nicholas Dellatacoma, and Rabbi Fazla**

84.     Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

85.     The Defendant Officers, individually and in concert, knowingly, willfully, intentionally, and with deliberate indifference, subjected Plaintiff to pretrial conditions of confinement that, either alone or in combination, posed an unreasonable risk of serious damage to Plaintiff's health, including Plaintiff's physical and mental soundness.

86.     The aforementioned conditions include, but are not limited to, shackling Plaintiff's feet and cuffing her hand to a hospital bed for more than

five days; denying Plaintiff use of the bathroom; and prohibiting Plaintiff from contacting her family.

87.     The aforementioned conditions also include, but are not limited to, Officer Winderman urinating with the bathroom door open in Plaintiff's room, causing her emotional distress and anxiety.

88.     The aforementioned conditions deprived Plaintiff of basic human needs and amounted to punishment without due process of law.

89.     The Defendant Officers thereby violated or caused the violation of Plaintiff's clearly established right not to be punished without due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and caused all of her injuries and damages.

90.     Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

91.     Each of the Defendant Officers is also liable for unreasonably failing to intervene to prevent such infringement of Plaintiff's constitutional rights.

92.     The actions of the Defendant Officers were motivated by evil intent and/or were done in reckless or callous indifference to Plaintiff's constitutional rights. Accordingly, punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

93.     Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

## COUNT V

**42 U.S.C. § 1983: Excessive Force in Violation of the Fourth and Fourteenth Amendments – Defendant Officers Chaim Winderman, Nicholas Dellatacoma, and Rabbi Fazla**

94.     Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

95.     The Defendant Officers, acting individually and in concert, deliberately and intentionally handcuffed Plaintiff to a hospital bed and shackled her feet for more than five days, knowing that no use of force was necessary under the circumstances.

96.     The Defendant Officers' use of force was excessive and unreasonable under the circumstances.

97.     By their actions, the Defendant Officers violated Plaintiff's clearly established right to be free from excessive and unreasonable use of force, to not be deprived of liberty without due process of law, and to be free from summary punishment.

98.     Each of the Defendants named in this Count also is liable for unreasonably failing to intervene to prevent such infringement of Plaintiff's constitutional rights.

99.     The actions of the Defendant Officers were motivated by evil intent and/or were done in reckless or callous indifference to Plaintiff's constitutional rights. Accordingly, punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

100.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.


## COUNT VI

### 42 U.S.C. § 1983: Municipal liability for unconstitutional conditions of confinement and excessive force – Defendant City of New York

101.    Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

102.    The Police Commissioner and police officers employed by the NYPD are agents and employees of Defendant City of New York.

103.    Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner or his authorized agents, during all times relevant to this Complaint, had final responsibility for training, instructing, supervising, and disciplining police officers and other employees and agents of the NYPD with respect to the constitutional prohibition on exposing hospitalized arrestees to unreasonable force or other unlawful conditions of confinement.

104.    At all times material to this Complaint, the City, through its policymakers at the New York City Police Department, breached that duty by carrying out a policy, practice, rule, procedure, or custom of handcuffing and shackling all hospitalized arrestees, including individuals who, like Plaintiff, pose no threat to anyone and are not attempting to escape.

105.    The City, through its policymakers within the NYPD, explicitly or tacitly approved the unconstitutional practice described above. In maintaining its policy, practice, procedure or rule regarding the indefinite physical restraint of hospitalized detainees, the city was deliberately indifferent to the constitutional rights of the public generally, and Plaintiff specifically.

106.    The Defendant Officers acted consistently with and pursuant to the aforementioned policy when they engaged in the conduct set forth above.

107.    At all relevant times, the City was aware of and deliberately indifferent to the fact that its policy would result in the deprivation of Plaintiff's and others' constitutional rights.

108.    The aforementioned policy is in part set forth in NYPD Patrol Guide, Section 210-02, which states that "The Department's policy is to handcuff all hospitalized prisoners to ensure the safety of persons present and prevent escape." P.G. 210-02 (emphasis in original).

109.    In addition, the City failed to adequately train the Defendant

Officers not to restrain hospitalized pretrial detainees for unreasonable periods

of time and when no restraints are necessary.

110.    The City's policy, including its failure to train, directly caused

Defendant Officers to cuff and shackle Plaintiff throughout her hospitalization

in violation of her right to be free from the unreasonable use of force and her

right to be free from conditions of confinement that posed unreasonable risks to

her safety.

111.    Defendant City was deliberately indifferent to the need for such

training, a need that was evidenced by prior complaints about the same policy,

*see Brim v. City of New York, et al.*, 13-cv-1082 (SJ) (judgment entered Aug. 3,

2017), *Morohashi v. City of New York, et al.*, 21-cv-07011 (EK) (MMH), and

by the inherent obviousness of the need to train officers in this area.

112.    The aforementioned policies exposed Plaintiff to a substantial risk

of serious harm.

113.    The aforementioned policies were the direct and proximate cause

of the constitutional violations suffered by Plaintiff as alleged herein.

114.    The aforementioned policies played a part in the Defendant

Officers' decision to keep Plaintiff handcuffed and shackled to a hospital bed

for more than five days.

115.    The aforementioned policies were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

116.    There is a substantial risk that Plaintiff will be subjected again to the NYPD's unlawful policy of shackling and cuffing hospitalized arrestees.

## COUNT VII

### 42 U.S.C. § 12132 – Violation of the Americans with Disabilities Act – Defendant City of New York

117.    Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

118.    Between June 23, 2023 and June 28, 2023, Plaintiff suffered from a physical or mental impairment that substantially limited one or more major life activities, or was regarded by the Defendants as having such an impairment, and was therefore a qualified person with a disability within the meaning of the Americans with Disabilities Act. 42 U.S.C. § 12101(1).

119.    Specifically, Plaintiff suffered from insulin-dependent diabetes.

120.    Plaintiff was regarded by the Defendant Officers as suffering from insulin-dependent diabetes.

121.    Solely by reason of her actual and/or perceived disabilities, Plaintiff was excluded from participation and denied the benefits of a timely arraignment.

122.    A timely arraignment is "a public program or activity" within the meaning of the Americans with Disabilities Act.

## COUNT XIII

**Violation of New York Civil Rights Law § 28 "Medical Attention for Persons Under Arrest" – Defendant Officer Alen Mariano, John Does #1-4, and the City of New York**

123.    Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

124.    Defendant Officer Mariano and John Does #1-4's failure to transport Plaintiff to the hospital immediately after learning of her urgent need for insulin caused Plaintiff to suffer serious physical injury or significant exacerbation of an injury or condition.

125.    By reason of the forgoing, Plaintiff is entitled to damages against Officer Mariano and John Does #1-4.

126.    Defendant City, as employer of Officer Mariano and John Does #1-4, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

## COUNT IX

**Intentional Infliction of Emotional Distress – Defendant Officers and Defendant City of New York**

127.    Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

128.    The Defendant Officers engaged in extreme and outrageous conduct by refusing to provide Plaintiff with medical care, causing her to fear and ultimately be afflicted by life-threatening complications of diabetes.

129.    The Defendant Officers engaged in extreme and outrageous conduct by applying restraints to Plaintiff's arms and legs for a period of more than five days.

130.    In shackling and cuffing Plaintiff, the Defendants ignored a clear risk of harm to Plaintiff.

131.    In refusing to allow Plaintiff to call her mother or girlfriend despite entreaties of medical providers and Plaintiff's suicidal ideation, the Defendants ignored a clear risk of harm to Plaintiff.

132.    The Defendants intended to cause Plaintiff severe emotional distress or disregarded the substantial likelihood that their use of force would cause Plaintiff such distress.

133.    Officer Winderman additionally intended to cause Plaintiff severe emotional distress when he urinated with the door open in the bathroom connected to Plaintiff's hospital room; refused to unshackle Plaintiff so she

25

could use the bathroom and instructed her to urinate in the bed; and refused to allow her to use a pen as recommended by her psychiatric care team.

134.  As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein alleged, including but not limited to severe emotional distress and suicidal ideation.

135.  Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

136.  Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

137.  Plaintiff is entitled to punitive damages against the individual defendants.


## COUNT X

**Assault under New York State law – Defendant Officers Chaim Winderman, Nicholas Dellatacoma, and Rabbi Fazla; and defendant City of New York**

138.  Plaintiff hereby incorporates by reference all foregoing paragraphs and further alleges as follows:

139.  At all relevant times, the Defendant Officers' actions placed Plaintiff in apprehension of imminent harmful and offensive bodily contact.

140.    As a result of Defendants' illegal conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment, and humiliation.

141.    As a result of Defendants' illegal conduct, Plaintiff was handcuffed and shackled to her hospital bed for more than five consecutive days without a judicial hearing, sustained physical injuries to her limbs, suffered shock to her nerves and nervous system, and suffered and will continue to suffer great pain and anguish in body and mind.

142.    By reason of the forgoing, Plaintiff is entitled to compensatory and punitive damages against the Defendant Officers named herein.

143.    Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

144.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

145.    Plaintiff is entitled to punitive damages against the individual defendants.

## COUNT XI

**Battery under New York State law – Defendant Officers Chaim Winderman, Nicholas Dellatacoma, and Rabbi Fazla; and defendant City of New York**

146.     Plaintiff hereby incorporates by reference all foregoing paragraphs and further alleges as follows:

147.     At all relevant times, the Defendant Officers touched Plaintiff in a harmful and offensive manner.

148.     At all relevant times, the Defendant Officers touched Plaintiff in such a manner without privilege or consent from Plaintiff.

149.     As a result of the aforementioned conduct, Plaintiff has suffered severe physical pain and mental anguish, shock, fright, apprehension, embarrassment and humiliation.

150.     Plaintiff was shackled to a hospital bed for more than five consecutive days without a judicial hearing, sustained physical injuries to her limbs, suffered shock to her nerves and nervous system, and suffered and will continue to suffer great pain and anguish in body and mind.

151.     By reason of the forgoing, Plaintiff is entitled to punitive damages against the Defendant Officers named herein.

152.    Defendant City, as employer of the Defendant Officers, is responsible for the Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

153.    Any joint and several liability of the defendants is not limited by CPLR 1601, by reason of the exceptions set forth in Article 16 of the CPLR.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in Plaintiff's favor and against Defendants as follows:

A.  Enjoining Defendant City of New York from shackling or cuffing hospitalized arrestees who do not pose an immediate risk their own safety or the safety of officers or civilians;

B.  Requiring Defendant City of New York to arraign hospitalized arrestees within a reasonable period of time and never more than 48 hours after an arrest absent a *bona fide* emergency or other extraordinary circumstance;

C.  Awarding such damages to Plaintiff as will fully compensate her for her loss of rights, as well as her physical and emotional injuries, owing to Defendants' conduct;

D.  Awarding punitive damages against the Defendants;

E.  Awarding reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

F.  Granting such other relief as may be just and proper.

Dated:      New York, New York
            May 7, 2024.


                         ZMO LAW PLLC

                         BY:_____/s/_____
                         ZACHARY MARGULIS-OHNUMA
                         TESS COHEN
                         BENJAMIN NOTTERMAN
                         353 Lexington Ave., Suite 900
                         New York, NY 10016
                         (212) 685-0999

                         *Attorneys for Plaintiff Kiana Burgess*